Decided on, written by, a judicial officer who failed the statutory test for disqualification. The COA is issued based on the opinion that the supposedly should have been disqualified by judicial officer wrote. So it's building in a layer of logic that doesn't work. You're saying a flawed opinion didn't go any further. I think that's where agreeing to disagree is. I think this court has said it's not flawed. This court has looked at the merits of that opinion and said it's not a flawed opinion. Reasonable jurists could not debate that there was no constitutional violation here. So much so that we're not even going to give you a crack at appellate review on it. And if you could point to something that he wrote in the opinion, if he had made a finding of fact, if there was something in the opinion where he could have slid something into the record or made a finding of fact or done something underhanded that would have poisoned the record, then I think I would certainly agree with you. But this is just a legal review. Well, in my view, two of the issues, and I believe this was asked about opposing counsel, two of the issues that he did raise in his petition had to do with the instruction of the jury with regard to intent and whether or not the discharge of the gun was accidental. In terms of the jury instructions that were given years ago at the state trial, the handling of the intent issue, those are actually two of the issues before Judge Martini that just dovetail right into the nature of the comments that he made in his congressional record statement. So an opinion where he says there's no basis for questioning the state's jury instructions, you may have a fundamental due process issue here, which is properly in habeas, which really isn't analyzed or addressed at all in his opinion. The issue regarding whether or not there was a deprivation by virtue of the instruction of the jury, a due process deprivation by virtue of the instruction, that's an issue that he spoke to back in 1995. Ms. Kidder, isn't your position more succinctly that the failure of this court to give a COA on the merits of the case merely means that we are not in a position hearing the case to affirm the merits of the case? In other words, we can't speak to the merits of the case. The only thing we can speak to is the 455. And the fact that a COA was not granted on the merits means that that's not before us and it's not to be adjudicated. I think that's an absolutely correct statement of the position, yes. So, for instance, we could, if a COA was granted on the merits, we could say, yes, there was a cloud. I wouldn't say attain a cloud on the opinion. We have reviewed the merits of the matter and we say we adjudicate that even though there was a cloud over the opinion, it is nevertheless affirmed on the merits. So, that's the consequence of the COA not being granted on the merits. That's correct. And I think I mentioned that in a footnote that my mission here was to address the disqualification issues. Not the merits. Not the merits at all. And I think that Judge Hartman's taking me a little further along that line and saying, well, why didn't we grant a COA on the merits if there were anything there we would have? I don't know if it was right or wrong. I'm just saying that you're asking us to send this back for a new judge. And we've already said by virtue of denial of the COA that no reasonable jurist would find that Miller's constitutional claims were erroneous. But yet we're being asked to send it down to another judicial officer and you're hoping that he'll do precisely what we said no reasonable jurist could do. And there's something in Congress about that. Because the one jurist who did act on it was, in our view, statutorily disqualified. And, therefore, that should take us back. I'm willing to grant you that that may be the case. But I think under the standard of review you have a problem because you're asking for another bite of the apple that we've already said is destined to fail. That's my concern. I understand the court's point. However, to the extent that the decisions by this court on the COA reflect an analysis of the opinion by the district court, that's where you're building in this cloud of opinion. I will change my phrase. If I may just address briefly one question. No, you're well beyond your time at this point, Ms. Giddens. Thank you very much. Both counsels go beyond the light of day. So we thank the counsels very much for their helpful arguments on what is an interesting case, and we'll take a matter of revising. Thank you. We'll call the matter of Burns v. Pennsylvania Department of Corrections now. Mr. Borgia? May it please the court, my name is Jeff Berger. I'm with the law firm of Drinker, Biddle, and Reith, and we represent the appellant, the plaintiff, Rodney Burns, in this matter. We ask to reserve three minutes for rebuttal. Granted. We request this court to reverse the decision of the district court on summary judgment for the reasons set forth in my brief. Today I will address two points in support of a position, and we will rely on our brief for the other arguments. First, I would like to address whether impairment of Mr. Burns' right to security in his inmate account is, in fact, a deprivation of property interest. And second, whether the regulatory scheme, the state's regulatory scheme, deprived Mr. Burns of his property interest by operation of law. First, due process protections attach when a person is deprived of their property interest without due process of the law in advance of that deprivation, typically. It's not necessary for the state actor to seize the entire res of a particular thing, that is, the property at issue. Mr. Berger, I was very intrigued by the argument you raised in the well-written brief. But cutting to the chase, do you have at your fingertips any authority from this court or any other court of appeals or any other court of record, as opposed to persuasive authority from commentators recognizing the right to security that is one of the types of property interest that these commentators and your arguments suggest are entitled to protection? Not a specific reference to the right of security. This is a matter of first impression in this court. So it is, for whatever weight this has, it is really a creature of academic discussion, not a recognized property interest heretofore by any court. Well, what the courts have recognized, Your Honor, is that there are these various different incidents of property, although they may not use that term. Typically, we'll refer to them as twigs in the property bundle of lights. Well, that's the old Hofeldian analysis, and I realized how dated I am. Because when I was in law school, it was Professor Hofeld who talked about, no, none of the commentators you've cited mention his name. So, Judge Callan, you probably remember that. Unfortunately, I deny it, but I seem to remember it. We're into other generations of commentators now. Yes, we talked about bundles of rights, and the more of the little twigs you took away or the more you added, that added to the property interest to the extent of the property interest. So I understand how your right to security fits in to that analysis. I simply wanted to establish what I thought was the case, that it is a creature of academic discussion, not as yet recognized in any precedent. So with that in mind, is the strongest approach for you to analogize the right to security to other more authoritatively recognized types of property interests? Yes, Your Honor. I would analogize them, first off, we had done this in our briefs, to the right that was recognized implicitly in the Smith v. Queen case, which was the right of the power of transmissibility, as Honoré has described it. I would also point to some of the other cases that have recognized the bundle of rights paradigm before the Supreme Court. In the Dolan case, you were dealing there with the right to exclusive possession. There were no other rights that were at stake there, but that's a case that was dealing with just one twig or one strand out of that bundle of rights. In that case, you were looking at a property owner who was being required to provide a public greenway for water runoff, and what they actually contested in the proceedings was the fact that that greenway had to be public as opposed to private. They conceded that the municipality or the local government had the right to require them for water runoff purposes to have a greenway, but they objected to it being public, and that rested on their right to exclude others under the right to exclusive possession. Yeah, well, given all these cases, why are you giving away the farm by saying that this bundle of rights analogy is some harebrained scheme of a law professor that's dreaming up something for which there is no precedent? You have ample precedent. Number one, there's no question that money in his inmate's account is his property. Unquestionably, he has property there, and you have a tremendous stream of cases which say that property cannot be taken without due process, and under the facts of this case, the question is whether or not there is a cloud which has been placed on his property by reason of the proceedings in the prison. So why would this be something which is unusual or new? Your Honor, I absolutely agree. I would not concede, just to clarify, I would not concede that the bundle of rights paradigm of property, of describing property interests is academic and not well-founded in jurisprudence. In fact, we've recognized, the Supreme Court has recognized the concept of bundle of rights over a period of many decades. Yes, Your Honor. Including encumbrances or clouds on real estate in particular, but other forms of property. Yes, Your Honor. And what I mean when I say that this is a matter of first impression, and what I am conceding is that the specific right to security is described by Sotomayor. So what's it close to? I mean, what recognized property interest is a right to security closest to? Well, that's difficult to say. I mean, the reason why Professor Inouye broke them out separately is these were the distinct types of right or power or duty that were related with a particular thing when dealing with property interests. Yeah, but the question for us is, they have, in my view, put a cloud. It's not a lien, it's not a mortgage, but there's a cloud over his bank account. Yes, Your Honor. Okay. What has been taken from him in terms of property by reason of that cloud? Well, what was taken was that one twig or one strand of the property interest that he held in his inmate account, which was this right to security against expropriation. To contrast it with what the appellees, the defendants, have contended, that the only recognized deprivation of property interest is to have actual money taken out of your account or to remove the use of it, their argument is similar to what was in the Supreme Court's decision in Loretta where the government was cutting all of the strands. They were taking the entire set of property interest for a particular thing. And what we're looking at here is something more akin to the Dolan or the Smith case where one single strand is gone. Can Mr. Burns withdraw the money tomorrow? He can, but... I believe so, sir. So why isn't this unright? I know you've argued that they've caused him to suffer a detriment in respect to that account, but if that account is alienable at his whim, how is this a deprivation? And why wouldn't, if he's concerned about it, why wouldn't he instruct someone to either withdraw the money or spend the money? I assume if he could withdraw the money, he could spend it as he wishes? Within the prison system, yes, Your Honor. So why is this a present deprivation? If I may, Your Honor, I have two points in response to that. First, this account is not a static pot of money. If he withdraws the money from the account, that wouldn't deprive the institution from being able to enforce this order at a later point because his account... If it was replenished. It will continue to be replenished, Your Honor. It continues to earn money. But that's what I'm suggesting. Isn't that when the issue is joined? If and when. We're talking about a hypothetical here. If, and I got the sense almost that the proceedings previous to this, there was sort of a message sent to the prison of be careful if you're going to continue to push this issue. And I state on the record, I wasn't too pleased with the way they came to the conclusion that he was the perpetrator here. That didn't seem to me to be consistent with what we typically see as due process. But that being said, why couldn't he bring an action if and when they decide to move on his money? Well, Your Honor, to refer back to that Loretto example I gave, that's a different kind of deprivation. That would be a complete deprivation of a piece of property that he owns. So this is just a threat? This threat is more than just, I guess... It's a threat of expropriation. However, as Judge Cohen has said, it casts a cloud over his account. If the court will indulge me and allow me to provide an illustration... In fact, I've attempted twice to get you to do that. Let me ask you then specifically, what similarity does the position of the prison bear to the position of a judgment creditor? I believe it would be very much the same. The only difference being that what we're dealing with here is an inchoate lien or judgment. So the threat remains the same. It's just that the actual lien interest, if you will, or security interest, if you will, bears some differences. Right. We know who the lien or is. That would be the institution. We know what the property is that it's attached to. But if I may provide that illustration... Stepping aside from this litigation, let's assume that the court was in the market for, say, a jar of pencils. And I have two jars. One is filled with 1,000 pennies, and the other is also filled with 1,000 pennies. They're identical in all respects with one exception. That second jar, Ms. Tesoro, my opponent here, she has an order that authorizes and directs her to take a handful of pens out of that jar. She hasn't done it yet. It doesn't say when she'll do it. She hasn't said when she'll do it. But that threat is there. She has an order. It can't be denied. It's a potential deprivation of property. To liken it to a judgment creditor, it seems to me that sinks your argument. Because unless and until the judgment creditor executes on a bank account or executes on a parcel of real estate or some other piece of property or property interest, the deprivation hasn't occurred. I would disagree, Your Honor. To look at it this way, that property interest, if I had those two jars and the court were in the market for a jar of pennies, which one would you buy for $10? How can you square that with, say, the Supreme Court's takings, jurisprudence on partial takings? The cases are legion that when a government acts and diminishes someone's property, actually diminishes the property. The property goes from $100,000 in value overnight to $80,000 in value. They've lost $20,000 of their fair market value. The Supreme Court has said time and again that that partial taking is not sufficient to constitute a taking. Well, Your Honor, I would distinguish between the takings and with this, which is in this context, what we're not looking at here is ultimately the question of remedy or relief. But what we're looking at here is simply a trigger for when due process applies to these proceedings below in the administrative disciplinary process. And if a property interest is impaired, it may not be subject to a remedy or subject to available relief, but it triggers the due process protections that go along with that. And they need to observe those before they can deprive you of that property. Counsel, sharing as I do Judge Hardiman's expressed concerns about the procedures followed in the disciplinary proceeding, and I believe that's what you were alluding to. If we find consistent with your suggestion here that there's some impairment of a property interest for due process grounds, for due process purposes, should we evaluate whether or not your client received sufficient process in the disciplinary proceeding, or should we remand it to the district court, since the district court didn't consider those questions or that question when the case was before it? Well, as we mentioned in the brief, under Dandridge, we believe that this case would be appropriate for remand. However, if the court felt that all the facts that needed were present in the record, it has the discretion, of course, to render that decision. We believe that my client was not afforded these due process rights. Well, yeah, but the disciplinary proceeding as such really is not before us. The district court didn't rule on it. The district court did not, but the facts are in the record. So wouldn't it be better for us to send it back if we rule in your favor on the property interest issue? Well, I'm not sure whether it would be better or not, but I would agree that that would be the most appropriate. Either way we rule on the property issue does not in any way implicate anything on the administrative proceedings for discipline, does it? No, it doesn't. It sends it back to the district court, and I would imagine we resume where we left off in summary judgment on the merits of the process. So you're dealing separately with the disciplinary matter from the property matter? Yes, because the property matter was a threshold matter to get to the rest of it. Thank you. We'll have you back on rebuttal, Mr. Berger. Ms. Tesoro? Ms. Tesoro, if you were successful in either entering into a stipulation with Mr. Burns that you were not aware of the fact that Mr. Burns was a member of the district court, about to assess his account for what appear to be very nominal medical damages, or if he were to file some kind of waiver, either administratively or with some court, wouldn't that dispose of his case? I think that's a very good point. I thought so, but I'm interested in your answer. As the record stands, I think there's no basis, really, to infer that the threat that's been alluded to really exists. I mean, this all goes back a long time. That's not the question. The question is why are we here, right? Well, that's the question. Well, in anticipation of this appeal and the argument, I did inquire as far as is this really ever going to happen and was told it is not. I asked specifically about a stipulation or a waiver. In fact, my recollection, I don't have it right before me, it would take me too much time to find, but the applicable regulation governing the prison system and with a superintendent actually requires, it's written in mandatory language, as I recall, shall assess. So I'm not suggesting there isn't some play in the joints that would permit the superintendent of the whole system to waive that. I'm suggesting that there ought to be, but that hasn't happened, so what are we to think? Well, it hasn't happened explicitly, but it has happened de facto, I think, is what I tell you. That doesn't help Mr. Burns. I mean, Mr. Burns' talk is cheap from his perspective. He needs to see something in writing that he's not going to be laboring under this impairment. Well, certainly I think that because as far as the appellees are concerned, there is no threat and no reasonable likelihood of anything happening. There is no problem at all in our trying to arrange exactly that. But that's a false argument because under the regulations of the state, tomorrow, although the inmate can alienate, as has been indicated, the entire amount in his prison account, the administration could tomorrow take whatever they want out of the account. No, I think that's an overstatement. After it's quantified, there's nothing further for them to do because it's been determined that they have a right to the money. After it's quantified, your position is they can't take it out? No, I think you're condensing the process too much. First of all, as you did say, it has to be quantified. That hasn't happened, presumably because there's nothing in effect to quantify it. But if it's your position that it's nominal, that it's minimal, it's de minimis. But even if it's one cent, once it's quantified, what remains to be done for the state to take the money? They have to give him notice and they have to give him what we nickname a holloway hearing to determine whether the quantification is valid. Assuming quantification, what remains for the state to do once they quantify it through an appropriate hearing from taking it out from his account? Well, I think there's two separate things there, at least the way I use the word quantify. The business manager has to arrive at a dollar amount in whatever the case happens to be. And then there has to be notice, a hearing, a decision, a right to appeal, and so on. That is the procedure, the due process, before the money gets taken. That's all quantification. Now, you want to answer the question, once it's quantified, whether it's one cent or $100, what remains for the state to do in order to take the money? After the entire process is complete, then the money can be taken. So in other words, once this is quantified, the game is up and the state can take the money right away. Again, Your Honor, I think we're using terminology slightly differently. Answer this straight out. Assuming quantification, whatever the proceeding is under the regulations, what does the prison official have to do after it's determined that it's $10.98 and appeals have run on the quantification? What remains for the prison officials to do except to take that money out of his account? After the entire process is done, nothing. All right. And how long has it been since the Department has had the ability, pursuant to its own regulations and its own procedures, to at least initiate the procedure that you've just outlined for us? It's been over three years, which is exactly why I say there's no reason to be scared. So Mr. Burns has been sitting there for three years waiting for the Commonwealth of Pennsylvania to do what we understand, or what I understand, the regulations to compel the superintendent to do or initiate proceedings so that he can accomplish, and you're telling us that that may never happen. And all the Commonwealth has to do is file a piece of paper or something akin to that that says it doesn't happen? Is anything I've just recounted inaccurate? Well, I think that the way the statute and regulations are written, it is not mandatory anymore than other grants of authority assume that every single case that can be prosecuted will be prosecuted. Let's assume that to be the case, then how does that help you? Since it's not mandatory, again, all the superintendent would have had to do, or all one of his agents would have had to do, is to notify Mr. Burns that we're not assessing this. It's over. In fact, you've had plenty of opportunity to do that during the pendency of this litigation. I can't disagree with you, and we can do it tomorrow. But you've never done it to date, is that correct? That's true. We have no stipulation so far. And you may do it tomorrow, you may do it tomorrow, correct? Or you may do it next year? Well, after this discussion, if it's going to be done, I think it would be a lot more sensible to do it tomorrow. Well, on this record, we have to assume that it's still an option for the state to take this money. Well, we're getting a little bit away from the legality of this case, though, because this cloud, in our judgment, does not constitute, the existence of this cloud does not constitute a deprivation of power. Well, we're not getting away from it. That's not the question. You're not answering my questions respectfully. The question I asked you is, you've filed nothing of record in this court indicating that you have abandoned any right to anything in this account. You've never filed that, even though it was suggested to you. We have to assume, therefore, that you have the right, under the statute you have the right and under the regulations, that you can take this money in the future, whatever that future is that you want to be. Don't we have to assume that? Yes. That being the case, what is the difference between the money in his inmate account? He has the same right to that money as he has if he has an account in a commercial bank, doesn't he? It's still his property. That's true, but what I am saying as a threshold issue for the appeal is that the right to due process attaches when there has been a deprivation. And our position is there has not been a deprivation. We understand that, but let me just, speaking only for myself, make an observation. We hear these arguments, we get to interpret the Constitution, it's perhaps the most important and fascinating thing that we do. But query whether we ought to do that in a case such as this. And it seems to me that you've made a representation as an officer of the court in good faith that the path toward the deprivation will not continue. In Mr. Burns' case, you've told us that the Commonwealth has made a determination, either through intransigence or fear of litigation, for whatever reason, that you will not continue down the path toward effectuating what you believe, at the end of the path, would constitute the deprivation. If that's the case, it seems to me the prudent thing to do is to put that in writing. I'm sure your able adversary would like to have us write a precedential opinion about the bundle of rights and the Constitution, but he has a client to represent who has real interests and real concerns, and speaking as one person, it seems to me the prudent thing to do in this case is for you to sit down with him and put this simple principle in writing and put this case to rest. Well, you haven't chosen to do that, even though we suggested it to you many moons ago. I'm sorry, are you referring to sending us to mediation? Yeah, well, we're not permitted, really, to get into that.  Well, the panel is directed that it be done. It obviously wasn't successful, but let me return to your comment a bit ago, though, and let me also make clear what the rules certainly make explicit, and that is while panels of this court are aware that a case has gone through mediation, we know absolutely nothing about what transpires there, as we know absolutely nothing about it here. We're still left with a question that has been asked frequently now, all of which is basically boiling down to why hasn't this case gone away, in light of your statements here early in your argument that this will probably never happen. We need, if we're left to decide this case, we need to address whether or not we have some property interest that's implicated in the imminency or the possibility of this happening. That's what the temporal period and events here may suggest, according to the theory that has been articulated by the petitioner. So the petitioner did suggest in the blue brief an analogy here to a judgment or to the role of the prison system being that of judgment creditor, and my recollection is the red brief said it is not, but it really didn't analyze that. It didn't really take an opportunity to explain why that is an inapt analogy. Could you speak to that here? I hope I can elaborate beyond the brief. I think it is not an apt analogy because, as I understand the typical process whereby somebody becomes a judgment creditor, there is a judicial proceeding at the end of which not only is liability, if you will, established, but damages or the amount of the judgment is quantified. The winning side's claim is reduced to judgment in a specific amount, and that becomes a lien. That becomes something upon which there can be execution. What about something that is more inchoate? What about something that is not a quantified money judgment? What about something in the nature of a Liz pendants or attachments? Well, a Liz pendants or an attachment, I understand that that could affect somebody's right to sell his house or whatever. Isn't it a cloud? It's a cloud, but I don't think that it is a cloud that is analogous to the cloud that exists here. Why not? In the Liz pendants example, there is a cloud that restrains somebody's actions with regard to their other assets. But here, the cloud, as Judge Hardiman pointed out, doesn't really restrain anything. For three years or more now, the appellant has had whatever he has had in his inmate account, and he has been able to spend the money that's there as much as he wanted. But as your adversary points out, the fact that what you are dealing with is an account that is fungible and can be replenished does not relieve Mr. Burns of any concern that some future balance might still be attached or at least be subject to a continuing cloud and perhaps eventual execution. The cloud that exists, though, is only a theoretical cloud that could... It's not theoretical. It's created by your own regulations. It's a cloud that, if he senses there's a cloud over his account, that's one thing. But the asset, the one and only asset that he has, is his to use and spend and dispose of and add to and subtract from completely at will for whether there's a cloud there or not. It's freely alienable in the way that a home that has a Liz pendants on it is not freely alienable. That's exactly true. But the cloud here is different in kind. The cloud here is he's living under a situation where his liability for the expense has been determined. That's absolute. He's living under the cloud that any time the state, under its regulation, quantifies that liability, liability has been determined, they can, at the stroke of a pen, subtract that from his prison account. Why isn't that a cloud which should be recognized for due process purposes, just like an attachment, Liz pendants, other encroachments on property? Because it hasn't happened and it isn't a deprivation until it happens. It hasn't happened with Liz pendants or attachments or even levies of execution until the sale is made. Well, the Liz pendants and attachments examples, the cloud that is created is a whole lot more specific than this cloud. Yeah, but the amount you're owed is not determined, is not determined with Liz pendants or attachments. But the Liz pendants or attachment is on a specific piece of property, not just on an inmate account. That's true, but the cloud here is on a specific piece of property, his account. Why should that be recognized? The question is this, you have not foregone, forsaken, that you will take the money. You've not indicated in this court, you've filed nothing of record that you will never try and get this $10.86 or whatever he owes you. Why shouldn't we recognize for due process purposes that there is something that has been taken from him and certainly from my point of view, the process here was not in accordance with due process. Well, Your Honor, I can only emphasize that nothing has yet been taken. I understand. You said that repeatedly. Mr. Sir, let me take just a slightly different approach here, and I know we're going beyond your time, but would you accept the basic proposition that if for due process purposes, the actions of the state, in this case the commonwealth, diminished to some extent the market value of property, that there has therefore, again for due process purposes, been some kind of deprivation, that a diminution in market value would constitute a deprivation of property for due process purposes? That sounds a lot like the partial taking example that was mentioned earlier. Well, I don't know whether it is or isn't, but I'm not talking about the takings clause. I made a point of twice emphasizing this is within the context of the due process clause. There are markets for everything. There are markets for accounts receivable. Markets fix prices as a function of their very existence. By definition, it's what they're about. If an economist were called upon as an expert to value the prison account of Mr. Burns, and there was either an imminency or some probability, given the regulations that apply here, that the value of his prison account, whether it's the balance now or the balance when replenished, would be diminished, stands a probability of being diminished, do you not think that that economist would say the account is worth less than what the balance shows right now, or what it would cash out as if it were being sold as the equivalent of an account receivable? Don't you think that there would be some diminution in the value of it? That cloud itself would cause an economic diminution in value? I understand the concept that you're describing, and I agree with what you're saying in a broad sense. I think under the facts of this case, the situation is so de minimis that no, there wouldn't really be a de minimis. Let me just dovetail on that question from a very practical standpoint of view, not economist. Suppose the appellant wanted to buy something here, and another prison inmate wanted to buy something, and whoever they want to buy it from says, okay, you want credit on this, so both of you gentlemen give us a financial statement. So the appellant here gives a financial statement, and the other inmate gives a financial statement. Both of them show in their financial statement that they have $500 in their prison account. The appellant here, when he makes out his financial statement, he could say, I got $500 in my prison account. Doesn't he have to drop a footnote saying that there is a, the accountants are big on footnotes. They put the contingencies. Some writers of opinions are. Yeah, well, I don't footnote too much, because they're afraid to get sued. And they put a footnote that this statement is contingent upon the state of Pennsylvania not levying, not taking $10.98 for an expense which he caused through an assault. Which one of the people, which one of these inmates who are buying this on credit, which one is going to be favored by the seller to extend credit to these two inmates who are going to pay for this over the next 20 years that they're in prison when the appellant here has this footnote in a financial statement identical to the financial statement with an inmate who has no footnote. Tell me which, now this is very practical, because this is the way the credit industry works. Which one of these inmates would the seller of the item on time favor? The way you've set up the question, the answer, of course, is the account without footnotes. Why haven't I set it up fairly? Have I skewed the, have I prejudiced the question in any way? Was it fairly given? It was balanced in its words, but what I'm concerned about is that something like that, such as the use of an inmate account to make an outside purchase on credit, just doesn't happen the way prisons work and the way inmate accounts work. So there would never be a situation that I can think of where somebody in the outside world was about to extend credit to one of two inmates and had to choose between them as far as who was more credit worthy. All right, I think we understand your position, Minister Soro. Thank you. Thank you. Mr. Bergen. Your Honor, if I may make a quick point on the stipulation waiver issue. I just wanted to say that this is not an issue of damages or reliever, of trying to alleviate future concerns, but rather of a trigger to due process protection. And it's our stance that due process already has attached. It attached at the time of that deprivation under our theory. You just put the rabbit in the hat saying it was a deprivation. Well, I guess I'm having so much trouble with the concept that there's a deprivation when tomorrow he can pick up the phone and take all the money out of the account. When you've got an attachment as a judgment creditor, when you have a Liz Pendens, when you have a lien, the whole point of the legal implication of those encumbrances is that I cannot freely alienate my property. You've already candidly admitted to us that Mr. Burns can freely alienate his property. He may not be able to at some point in the future, depending upon what the Commonwealth does, but right now he can freely alienate his property. So why shouldn't we wait until such time as the Commonwealth actually takes action to deprive him? Your Honor, the alienation power is a completely different aspect of the rights to property. And this right to security is distinct from alienation. So he may retain the power of transmissibility, the right to alienate his property, but he still has lost that right to security. And stepping forward from that, according to the case that the appellate has set examine, it notes in there that a constitutional tort is complete when that deprivation occurs without due process. And so that's where our theory rests, that this is not a situation that can be eluded by a stipulation of a waiver because the deprivation has already occurred. I take Judge Hardiman's question to be effectively one of rightness. I think he used that word. In fact, my own notes from earlier on in this case raised the question, too. Did the Commonwealth in its red brief or at any point raise the issue of rightness here? Not in so many words, at least. I didn't perceive it. I don't recall it. How can you say that a stipulation would not moot it? You're telling us your client is laboring under this cloud, and I guess I was not so delicately urging the Commonwealth to just lift the cloud, but now you're telling us if they agree to lift the cloud, your client is still suffering a deprivation. Explain that. Well, this case is not about his claims regarding this cloud over his inmate account. The case is about his due process rights, which were violated when that order was entered. And to lift that cloud now, that cloud has been in place already in the constitutional court that we brought. It was complete at the time that that order was originally entered. By stipulating or waiving the right to garnish the account, they removed that future threat, but the constitutional harm remains. The harm of what? The cloud has been lifted. That he was put through the disciplinary proceedings without having been provided with his due process rights, and that may be one that's only amenable to nominal damages. So he really doesn't want the cloud lifted on his account. He wants money for what happened to him. Actually, no, Your Honor. What he wants is to have his—he wants equitable relief primarily, although there are damages claimed as well, and that is to have his record expunged, his security level restored, and to be returned to the eastern district of the state where he has access to a visitation by his family. Well, this is all very interesting to me because, as I understand your argument, what you're saying here is the issue isn't the financial aspect of his account. It's the fact that they adjudicated him guilty of something, a crime within prison that he didn't commit. Yes, that's the ultimate issue, Your Honor. Yeah, but that's not before he was deprived of a due process hearing then? Correct. Well, no, that's not the deprivation. That's what his ultimate complaint is about. What I'm saying is that this property interest issue is a threshold issue, and that he was deprived of his property at the time when that order was entered, and even if that cloud is removed now, that doesn't put the count back in the bag, I guess. But you're saying he wants his record expunged. That says he didn't have a fair hearing. Yes, Your Honor. But the due process clause requires that you be deprived of life, liberty, or property without due process of law, and now, as I understand your argument, you're saying the property right or bundle or stick that he wants to be repaired is the conviction because you're seeking an expungement. The due process claim that we have in this constitutional court is one that comes in two phases. You need to have that threshold finding of a life, liberty, or property interest for due process to have attached, and then, having had due process attached, you have the constitutional. But he was adjudicated guilty at the hearing before they ever did anything to move on his account, to even take step one in the process. So what you're saying is you gave me a kangaroo court, and I may well agree with that. You didn't give me due process. You fingered me as the guy who perpetrated this. I'm innocent. That violates my due process rights. But you didn't take away my life, liberty, or property until after that proceeding was concluded, and then you decided that you might, at some future date, assess me on my inmate account. Well, the retrospective nature of a due process claim is present in pretty much any due process case. That's not answering the question, and I'm now confused, quite honestly, by your responses to Judge Hardiman's question because I thought we were talking about two discrete alleged due process violations here, one that occurred in the course of and as a result of the disciplinary process within the prison, and then a separate due process which might implicate other than property interests, of course, and then ultimately a due process violation that occurs by virtue of this right of security being impaired or invaded. So if I'm wrong about that, I want to right now understand what your theory is. Your Honor, this isn't two separate due process violations. We're not dealing with two separate due process violations, but rather the threshold to due process attaching to the proceedings at all. In order for due process to be at issue, there has to have been a deprivation of a life, liberty, or property interest, and that's what we're talking about today is that property interest. All right, so is it a liberty interest that was implicated by the alleged due process violations that occurred in the disciplinary process? No, Your Honor. The due process clause guarantees fair proceedings in reaching the bat's conclusion, and these proceedings overall were unfair is what we're contending, but that's that second phase. That's the merits of the due process claim, but the first thing is there's a threshold issue of was there a property interest involved, and there is a property interest. It's a minor part of the relief or of the remedy that's available, but we need to get through the door. We need to get over the threshold. That's what we're looking at. That's the only thing that's before us on this appeal, whether or not property was taken by the determination that his inmate account could be levied on. Is that correct? Yes, that's all correct. We're not dealing with due process in the disciplinary proceeding on this appeal. Well, the appellees asked you to as an ultimate ground of affirmative, but we're saying no. But that's not really what was briefed and what is before us.  And the district court has not ruled on that yet. No, it hasn't. All right. So as far as we're concerned, the only issue, discrete issue before us is whether or not there's been a due process violation by reason of the determination, not the qualification, that his inmate account can be taken. Ultimately, yes. Even if we go your way on that, that doesn't get him an expungement. That protects his account from any sort of attachment. If we agree that the Commonwealth, by taking this initial step, has deprived him of property and we say you can't do that, that doesn't help him on the expungement. Well, what that does is We're dealing with the remedy. Well, what this property interest issue is, is like I said, the threshold just to attach due process. He wants due processes there. His remedies are broader than the simple threshold issue to get in there. If we were dealing with a liberty interest here, that wouldn't keep him from, if he were to establish a liberty interest, that would get him through the door. He would have a due process claim. That would have limited it to only remedies related to the liberty interest that got him over the threshold. Okay, look. If the district court, when it does, rule on whether or not his actual discipline proceeding violated due process, if you prevail on that, then even if the determination of quantification is made, that would wipe all that out, because it's based on the initial discipline or proceeding. But that is not before us. The only discreet thing before us is whether property was taken by reason of this determination that he owes the state money. Yes, your honor. Alright, fine. I'm sorry, I have to ask one other question. Did your client have a right to appeal the conviction, for lack of a better word, the determination? Did he fully exhaust that through the administrative process? Yes, sir, he did. Yes, sir, he did. Okay. Alright. Thank you, counsel, for your arguments. This is many things, including a perplexing case. I would like to seek...